**Andrew G. Patel**
Attorney-at-Law
The Trinity Building
111 Broadway, Suite 1305
New York, New York 10006
Telephone: 212-349-0230                                                                 Fax: 212-346-4665

**By Hand and ECF**

September 29, 2014

Honorable Lewis A. Kaplan
United States District Judge
United States Courthouse
500 Pearl Street
New York, NY 10007

                          Re:    United States v. Adel Abdel Bary
                                    (S15) 98 Cr. 1023 (LAK)

Dear Judge Kaplan:

      This letter is submitted in response to your Honor's invitation to the parties during the last proceedings on September 19, 2014, to address in writing why your Honor should accept the plea agreement executed by the Government and Adel Abdel Bary and to illustrate why to do so would be a just result.

      The short answer is that the plea agreement should be accepted and is just because it reflects the Justice Department's reasoned exercise of its prosecutorial discretion after multiple trials and more than 15 years of investigation. The Government's initial theory of Mr. Abdel Bary's liability was premised on the understanding that Mr. Abdel Bary received faxes claiming responsibility for the embassy bombings before the bombings occurred and his subsequent communication these faxes to others. We believe that the evidence shows that the Government cannot prove beyond a reasonable doubt when these faxes were received by Mr. Abdel Bary. In addition, new discovery was received from the United Kingdom only recently that illustrated Mr. Abdel Bary's clearly articulated opposition to the use of violence against innocents during the relevant time period. As a result, the parties have negotiated and executed a fair agreement that will allow the Court to impose an appropriate sentence and that significantly conserves judicial, prosecutorial and

CJA resources by substantially shortening the trial on this indictment.

**Preliminary Statement**

The indictment of Mr. Abdel Bary that was scheduled to go to trial on November 3, 2014, charges Mr. Abdel Bary with multiple counts of conspiracy related specifically to the bombings of the United States embassies in Nairobi, Kenya and Dar es Salaam, Tanzania; three counts related to the explosives in connection with those bombings; and 273 counts of murder or attempted murder. The plea agreement negotiated by the parties and submitted for your Honor's approval requires Mr. Abdel Bary to plead guilty to one conspiracy to violate 18 U.S.C. § 844 (n) which had among its objects making a threat concerning an attempt to kill or injure people or property means of explosives (Count one); one substantive count of transmitting via international telephone calls to the media the contents of claims of responsibility for the embassy bombings in violation of 18U.S.C. 844(e) (Count two); and one conspiracy that had as an object the murder of United States nationals outside the territory of the United States, by conveying messages from coconspriators to members of the media, in violation of 18 U.S.C.§ 371 (Count three). In exchange, the Government agreed to move before your Honor to dismiss the open charges. The maximum term of imprisonment that could be imposed by your Honor on the charges in the superseding Information, pursuant to statute, is 25 years.[1]

Below we have set forth, in significantly greater detail than the discussion on September 19, facts demonstrating that the negotiated plea agreement encompasses all of Mr. Abdel Bary's offense conduct. Mr. Abdel Bary is not agreeing to plead to lesser conduct. Rather, the Government, having analyzed the facts that it can prove beyond a reasonable doubt, has charged offenses that accurately reflect Mr. Abdel Bary's conduct in connection with the embassy bombings. The agreement thus reflects the Department of Justice's reasoned exercise of prosecutorial authority and allows for the imposition of an appropriate sentence that fulfills the requirements as set out in 18 U.S.C. § 3553(a). The agreement also takes into consideration litigation-related issues including evidence that might be proved by stipulation and that as to which witnesses would be required and the efficient use of judicial, prosecutorial and CJA resources.

---

[1] Mr. Abdel Bary was arrested in the United Kingdom in July 1999 in connection with the pending indictment. In calculating any remaining term of imprisonment that may be required, 18 U.S.C. § 3585(b)(1) provides that "[a] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences ... as a result of the offense for which the sentence was imposed."

Background

Adel Abdel Bary is an Egyptian citizen who was educated as a lawyer. In the years before and after the 1982 assassination of Egyptian President Sadat, large numbers of people who opposed the Egyptian regime – Mr. Abdel Bary among them – were arrested and tortured. Mr. Abdel Bary was repeatedly arrested, detained and tortured by Egyptian authorities. To this day, Mr. Abdel Bary bears the scars of that torture. Were Mr. Abdel Bary to shave his beard, the marks from where burning cigarettes were pushed into his face would be visible. He went to trial several times in Egypt, and each time he was acquitted.[2] In order to put an end to the cycle of arrest and torture, in October 1991 Mr. Abdel Bary left Egypt. He went to the United Kingdom where he sought and was granted asylum.

Once in London, Mr. Abdel Bary founded a human rights organization dedicated to working against the Egyptian government called the International Office for the Defense of the Egyptian People ("IODEP"). The founding statement for IODEP is a scathing attack on the Egyptian government. The office, on Beethoven Street, was equipped with computers and fax machines provided by funding from the group known as Egyptian Islamic Jihad ("EIJ").[3]

Mr. Abdel Bary's relationship with EIJ was tumultuous. EIJ's Founding Council members were infuriated by Mr. Abdel Bary's statements to the media in which he condemned the attacks on tourists at Luxor, criticized the violence against civilians

---

[2] Mr. Abdel Bary was convicted in *abstenia* in an Egyptian court.

[3] EIJ was one of several groups whose goal was the overthrow of the Egyptian government; it started as a nationalist movement with no interest in attacking the United States. EIJ's leadership consisted of members of its "Founding Counsel" and the group's leader was Ayman Al Zawahiri. Mr. Abdel Bary was never a member of EIJ's Founding Counsel. Zawahiri's strategy for EIJ was to recruit Egyptian military officers who eventually could lead a military overthrow of the Egyptian Government. In Egypt, Mr. Abdel Bary provided legal representation to Zawahiri and represented other EIJ members, but as a lawyer, Mr. Abdel Bary did not fit the standard profile of an EIJ member.

By contrast, Ibrahim Eidarous, a former Egyptian military officer, was typical of EIJ's recruits. He held a position on the EIJ Founding Counsel, and when he moved to London in 1996, Zawahiri made him the head of EIJ operations in London. Messrs. Abdel Bary and Eidarous were close friends. Mr. Eidarous used the office on Beethoven Street. Osama Ben Laden had established a separate office in London, with separate phone and fax lines.

practiced by the Armed Islamic Group ("GIA") in Algeria, and denounced Abu Qatada's endorsement of violence against Algerian civilians. As a result, there were times when the Founding Council expelled Mr. Abdel Bary from the organization. When EIJ's Founding Council ordered Mr. Abdel Bary to go to Afghanistan, he refused. Nonetheless, he continued to serve as EIJ's media liaison facilitating communications between representatives of various media outlets with whom he had built relationships with Islamists, including particularly Zawahiri, in Afghanistan.

By the late 1990s, EIJ was in disarray. Zawahiri was with Ben Laden in Afghanistan and the Sudan, and members of the EIJ Founding Council had scattered to various places in Europe and Yemen. When Zawahiri signed the 1998 fatwa entitled the "World Islamic Front for Jihad Against Jews and Crusaders" he did so without prior approval from the EIJ Founding Counsel. As demonstrated by correspondence between Zawahiri and Founding Counsel members, there was no consensus on this fatwa by members of the Founding Counsel, who were focused on events in Egypt. That said, however, it was not publicly disavowed either by members of the Founding Counsel, or by Mr. Abdel Bary.

### The Events of August 1998

On August 4, 1998, EIJ issued what has come to be known as the "threat fax" that threatened retaliation for the arrest of EIJ members in several central European countries and their deportation to Egypt. After reviewing that fax and mere days before the embassy bombings in Africa, Mr. Abdel Bary hand wrote a message denouncing the use of violence against the West (including specifically the United States) and condemning the use of violence against women, children, the elderly, and civilians. The note also said that if Mr. Abdel Bary were ever to learn that EIJ was doing any work with Ben Laden, that he would have nothing further to do with EIJ or Zawahiri.[4]

---

[4] This note was only recently discovered. After Mr. Abdel Bary was extradited from the United Kingdom in October 2012, the defense team asked to review the original documents seized from Mr. Abdel Bary's home, office and other locations in connection with his September 1998 arrest. These documents finally arrived in March 2014. For reasons unknown, some of this material – which at all times had been in the possession of the UK government – had not been provided to the United States Government and therefore was not part of the discovery produced in 2012. When Mr. Abdel Bary with his counsel started the process of reviewing this evidence, it quickly became apparent that there was a significant amount of material that had not been reviewed by anyone since its 1998 seizure. Mr. Abdel Bary's handwritten note was found during this review of the evidence.

After the August 7, 1998, bombings of the United States Embassies in Kenya and Tanzania, Mr. Abdel Bary received and passed on the claims of acceptance of responsibility to international media outlets.  The critical fact is that Mr. Abdel Bary received the claims of responsibility after the bombings in Africa and not before.

The claim of responsibility faxes consist of multiple pages that appear to have been transmitted by fax in August 7, 1998.  The pages indicate that they were sent to a fax transmitting service known as "Grapevine" from an unknown fax machine, in an unknown location on August 7, 1998 no earlier than 4:45AM.  The Government's position was initially that the time stamp referred to Greenwich Mean Time, the London time zone, and that accordingly the faxes were received before the bombings.

In the prior trials of this matter, as your Honor knows, the facts of what occurred in London were introduced largely by stipulation and without serious opposition, investigation or forensic understanding of the operation of fax machines.  In the course of preparing this matter for trial, we have learned that the time stamp information in the fax headers is not dispositive of the time when that fax was received.  Forensic experts have confirmed that the time stamp is a function of the sending equipment, not the receiving equipment.  The time is manually programmable and can be set to whatever time the sender chooses.  In sum, there is no reliable evidence of when the claim of responsibility faxes were sent or received.  Moreover, even if a fax had come into Grapevine at that early hour, the office was closed and the faxes would not have been available to Mr. Abdel Bary until after the bombings in Africa had occurred.

In September 1998, while Mr. Abdel Bary was concentrating his efforts on the work of the IODEP, he was arrested by the Anti-Terrorism Branch of the London police.  His home and office addresses, including Beethoven Street, were searched.  After several days of interrogation he was released without being charged.

In support of the request for Mr. Abdel Bary's extradition, the Government of the United States argued that the faxes which claimed responsibility for the August 7, 1998 bombings of the United States Embassies in Kenya and Tanzania were received by Mr. Abdel Bary prior to the actual bombings.[5]  This mistaken belief that Mr. Abdel Bary

---

[5] This argument was made in the affidavit of then Assistant United States Attorney Kenneth M. Karas and submitted as an exhibit to Courts in the United Kingdom in support of the United States request for Mr. Abdel Bary's extradition.  The view that Mr. Abdel Bary received the claims of responsibility faxes prior to the bombings was also contained in an affidavit by FBI

received the "Claim of Responsibility" faxes prior to the bombings explains why Mr. Abdel Bary who was never in Africa, was indicted on the substantive murder counts while his current co-defendants -- both of whom are alleged by the Government to have travelled at various times to Africa -- are not charged with any of the substantive murder counts.

The Applicable Law

Where a plea agreement requires the dismissal of pending charges, such as the one here, Fed. R. Crim. P. 11(c)(3)(5) authorizes the Court to reject a plea agreement. The rule does not, however, provide any guidance as to how the Court should exercise this discretion. As your Honor noted, some guidance appears in U.S.S.G. § 6B1.1 (2013) and its commentary, and in the limited body of Second Circuit law, including *United States v. Torres-Echavarria*, 129 F.3d 692 (2d Cir. 1997).

In *Torres-Echavarria*, while the Second Circuit upheld the District Court's rejection of a plea agreement, the facts of that case are distinguishable. That defendant had an extensive state and federal criminal history. Each time he was arrested, he accepted significantly reduced dispositions, and then re-offended. The Honorable John Gleeson just had enough and rejected a negotiated plea agreement on an illegal re-entry indictment that capped the defendant's prison term at 24 months when the then binding sentencing guideline range was 37 to 46 months for the offense charged in the indictment. Judge Gleeson determined that it would not be in the public interest to accept the plea agreement reasoning that the trial was likely to be short and that neither the risk of an unsuccessful prosecution, nor the use of prosecutorial resources was a major concern. None of these factors are present in the matter now before the Court.

In an even earlier decision, in *United States v. Serverino*, 800 F.2d 42 (2d Cir. 1986) the Second Circuit upheld the District Court's rejection of a plea agreement to a lesser included offense where the District Court had concluded that the defendant failed to truthfully admit his complete offense conduct. This case is similarly inapposite. Mr. Abdel Bary has truthfully and fully admitted the entire extent of his offense conduct.

By contrast, U.S.S.G. §§ 6B1.1 and 6B1.2 (2013), which are Policy Statements, and their related commentary offer support for accepting this plea agreement.[6] U.S.S.G. §

---

Special Agent John E. Cloonan made in support of the Complaint filed in this matter and repeated in Government's Skeleton Argument submitted to the courts in the United Kingdom in support of Mr. Abdel Bary's extradition.

[6] Your Honor has already determined that Mr. Abdel Bary's guilty plea to the superseding

6B1.1 parallels Rule 11, but the commentary "recommends that the court defer acceptance of the plea agreement until the court has reviewed the presentence report. U.S.S.G. § *6B1.1comment.* Under the current schedule, a separate trial of Mr. Abdel Bary would be required in the event that after reviewing the PSR the Court were to reject the plea agreement and Mr. Abdel Bary were to elect to withdraw his plea and proceed to trial.

The Policy Statement appearing in U.S.S.G. § 6B1.2 sets out the standard for acceptance of a plea agreement:

> In the case of a plea agreement that includes the dismissal of any charges or an agreement not to pursue potential charges (Rule 11(c)(1)(A)), the court may accept the agreement if the court determines, for reasons stated on the record, that the remaining charges adequately reflect the seriousness of the actual offense behavior and that accepting the agreement will not undermine the statutory purposes of sentencing or the sentencing guidelines.

The commentary to this section provides:

> The court may accept an agreement calling for dismissal of charges or an agreement not to pursue potential charges if the remaining charges reflect the seriousness of the actual offense behavior. This requirement does not authorize judges to intrude upon the charging discretion of the prosecutor.... [W]hen the dismissal of charges or agreement not to pursue potential charges is contingent on acceptance of a plea agreement, the court's authority to adjudicate guilt and impose sentence is implicated, and the court is to determine whether or not dismissal of charges will undermine the sentencing guidelines.

U.S.S.G. § 6B1.2, *comment.*

It is respectfully submitted this guidance counsels your Honor to accept the plea agreement. The plea agreement takes into account all of Mr. Abdel Bary's offense conduct, and it does not undermine the sentencing guidelines. The guidelines provide that where the statutory maximum "is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence." U.S.S.G. § 5G1.1(a) (2013).

---

information is constitutionally valid. *See* Transcript of September 19, 2014 ("Tr.") at 33; Docket, Minute Entry, Sept. 19, 2014 ([t]he guilty plea is accepted by the Court").

Honorable Lewis A. Kaplan
United States District Judge
Page 8


### The Plea Agreement Is a Just and Appropriate Disposition

We understand your Honor's concern that the charges in the Information pale in comparison to the charges in the Indictment, but Mr. Abdel Bary has admitted to serious criminal conduct. We commend the U.S. Attorney's Office for the Southern District of New York and the Department of Justice for having the sound judgment to reevaluate its case against this defendant. We also appreciate that while the Government may not agree in all respects with our assessment of the evidence as set forth above, we can agree that the case against Mr. Abdel Bary, as charged in the indictment presents serious litigation risks and that reasoned exercise of prosecutorial discretion dictated the terms of the negotiated plea agreement. Moreover, the Government and Mr. Abdel Bary's defense team also agree that the trial scheduled to begin in November will be considerably shorter if Mr. Abdel Bary is not a defendant in that trial.

### Conclusion

We urge your Honor to accept this plea agreement because it holds Mr. Abdel Bary accountable for the entire scope of his offense conduct. It also reduces the length of the upcoming trial, thereby saving valuable judicial, prosecutorial and CJA resources. Most importantly, we respectfully ask your Honor to accept this plea agreement because it authorizes your Honor to impose a just sentence that is appropriate for this defendant and this defendant's conduct.

Respectfully submitted,

*[signature]*

Andrew G. Patel
Linda Moreno
Lauren Kessler
Jill R. Shellow

cc: All counsel (by ECF)
Adel Abdel Bary (by legal mail)