UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,


              -against-                          S7 and S15 98-cr-1023 (LAK)


ADEL ABDEL BARY,

                          Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

> Sean S. Buckley
> Adam Fee
> Nicholas J. Lewin
> Stephen J. Ritchin
> Assistant United States Attorneys
> Preet Bharara
> UNITED STATES ATTORNEY
>
> Andrew G. Patel
> Lauren Kessler
> LAW OFFICES OF ANDREW G. PATEL
>
> Linda Moreno
> LAW OFFICE OF LINDA MORENO
>
> *Attorneys for Defendant*

LEWIS A. KAPLAN, *District Judge.*

        Defendant Adel Abdel Bary was indicted in this Court in 2000 for, among other things, conspiring with Usama Bin Laden and others to kill Americans abroad by, among other means, bombing the United States embassies in Nairobi, Kenya, and Dar es Salaam, Tanzania,

bombings in which 224 people reportedly were killed and many more injured. The matter now is before the Court for decision on whether to accept or reject a plea agreement pursuant to which the government would dismiss the indictment pending against Abdel Bary in exchange for his plea of guilty to a three-count superseding information. The most important practical effect of the plea agreement, were it accepted, would be to limit the maximum term of imprisonment that might be imposed upon Abdel Bary to twenty-five years as compared to the maximum term of life imprisonment were he convicted of all or, indeed, some of the charges in the pending indictment.

*Facts*

*The Indictment*

The pending indictment (S7) contains 308 counts. Counts One through Six charge conspiracies to murder, bomb, and maim. Abdel Bary is charged in Count One (conspiracy to kill United States nationals[1]), Count Three (conspiracy to murder[2]), Count Four (conspiracy to use weapons of mass destruction against United States nationals[3]), Count Five (conspiracy to destroy buildings and property of the United States[4]), Count Six (conspiracy to attack national defense utilities[5]), and Counts Seven through Two Hundred and Eighty–Six (various substantive crimes

---

[1] 18 U.S.C. § 2332(b).

[2] *Id.* §§ 1114, 1116, 1117.

[3] *Id.* § 2332a(a)(1), (a)(3).

[4] *Id.* § 844(n).

[5] *Id.* § 2155(a), (b).

relating directly to the United States embassy bombings, including 224 counts of premeditated murder[6]).  Many of these counts require the imposition of a life sentence upon conviction while others permit such a sentence at the discretion of the sentencing court.[7]

*The Plea Agreement and the Superseding Information*

On September 19, 2014, Abdel Bary entered into a plea agreement under which he agreed, *inter alia*, to waive indictment, to consent to the filing of a three count superseding information (S15), to plead guilty to the information, and to waive his right to appeal from or otherwise challenge any sentence of up to twenty-five years imprisonment.  In return, the government agreed, subject to the Court's approval, to dismiss the open counts against Abdel Bary.

The superseding information (S15) was filed on September 19, 2014, and contains three counts.  Abdel Bary is charged in Count One with conspiring in violation of 18 U.S.C. § 844(n) and 844(e) to threaten killing by means of an explosive, in Count Two with making such a threat in violation of 18 U.S.C. § 844(e), and in Count Three with conspiring in violation of 18 U.S.C. § 371 to violate 18 U.S.C. § 2332(a)(1) by killing United States nationals outside the United States.

The pivotal points for purposes of the matter now before the Court are that the superseding information (1) charges in Counts One and Two offenses punishable by no more than ten years imprisonment, and (2) charges in Count Three much the same conspiracy to kill United

---

[6]
    *Id.* §§ 1111, 1114, 2.

[7]
    *See United States v. Gonzalez*, 922 F.2d 1044, 1050 (2d Cir. 1991) ("[T]he sentencing court has no discretion under § 1111 to impose a sentence other than life in prison for first-degree murder.").

States nationals as Count One of the S7 indictment, but charges that conspiracy under a statute that imposes a maximum term of imprisonment of five years.[8]  In practical effect, then, the superseding information would eliminate the possibility of life imprisonment and cap Abdel Bary's sentencing exposure at twenty-five years.

On September 19, 2014, Abdel Bary entered a plea of guilty to the superseding information.  The Court found the plea constitutionally valid but has not accepted it within the meaning of Federal Rule of Criminal Procedure 11.  It explicitly reserved decision as to whether to accept or reject the plea agreement and requested the parties to file memoranda addressing the question whether it should do so.  The Court now has had the benefit of those memoranda.

*Discussion*

Federal Rule of Criminal Procedure 11(c) governs plea agreement procedure.  It divides plea agreements for pleas of guilty and *nolo contendere* into three categories – those in which the government agrees that it will:

"(A)    not bring, or will move to dismiss, other charges;

---

[8]  Count Three of the superseding information charges the conspiracy under Section 371 of the Criminal Code whereas Count One of the indictment charges it under Section 2332(b). The maximum term of imprisonment for violation of Section 371 is five years as compared with life for violation of Section 2332(b).  *Compare* 18 U.S.C. § 371 ("If two or more persons conspire to commit any offense against the United States . . . each shall be . . . imprisoned *not more than five years* . . . .") (emphasis added), *with* § 2332(b) ("Whoever outside the United States attempts to kill, or engages in a conspiracy to kill, a national of the United States shall . . . (2) in the case of a conspiracy by two or more persons to commit a killing that is a murder as defined in section 1111(a) of this title, if one or more of such persons do any overt act to effect the object of the conspiracy, be fined under this title *or imprisoned for any term of years or for life* or both so fined and so imprisoned.") (emphasis added).

"(B)    recommend, or agree not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request does not bind the court); or

"(C)    agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement)."

Courts lack discretion with respect to so-called Type B plea agreements – such agreements must be accepted if they are constitutionally valid and satisfy the requirements of Rule 11(b).[9]  In contrast, courts either may accept or reject Type A and C plea agreements in some circumstances even if the defendant's plea is constitutionally valid and otherwise satisfies Rule 11(b).

The plea agreement now before the Court is a Type A plea agreement because the government has agreed to dismiss the S7 indictment as against Abdel Bary in exchange for his plea of guilty to the S15 information.  It therefore is subject to approval or rejection by the Court.  As the Second Circuit has stated, "[a] trial judge is not required to accept every constitutionally valid . . . guilty plea me[]rely because a defendant wishes so to plead . . . and may reject a plea in [the] exercise of sound judicial discretion."[10]  Indeed, where, as here, the defendant is "proposing to plead to a lesser offense than the one for which he was indicted, the district court possesse[s] broad latitude to evaluate the proposed plea."[11]

---

[9]    *See, e.g.,* FED. R. CRIM. P. 11(c)(3); *United States v. Spiegelman*, 4 F. Supp. 2d 275, 286 n.67 (S.D.N.Y. 1998) (citing authorities).

[10]    *United States v. Severino*, 800 F.2d 42, 45 (2d Cir. 1986) (internal quotation marks and citations omitted).

[11]    *United States v. Torres-Echavarria*, 129 F.3d 692, 697 (2d Cir. 1997).

The Court's principal initial concern with respect to the plea agreement was that it would limit Abdel Bary's maximum possible term of imprisonment to twenty-five years which, in the circumstances of this case, may be too lenient. To be sure, any twenty-five-year sentence is a severe penalty. Its severity surely is difficult fully to imagine if one has not been imprisoned and is not facing such imprisonment. But it is difficult also to imagine the horror wrought by the conspiracy to which this defendant has pleaded guilty – a conspiracy to kill United States nationals pursuant to which two United States embassies were bombed, 224 people killed, and thousands more injured. Moreover, this defendant conspired with Usama Bin Laden and others committed to a program of killing Americans. In the event of conviction, the factors articulated in the Sentencing Reform Act – most notably, the need for the punishment to reflect the seriousness of the offense, to deter others from similar actions, and to ensure that this defendant is prevented from committing future such acts[12] – arguably counsel a sentence of life imprisonment, a sentence imposed on others in comparable situations. Indeed, "concern that the resulting sentence would be too lenient" is

---

Other circuits have described the scope of a district court's discretion with respect to acceptance or rejection of Type A and Type C pleas in less expansive terms. *E.g.*, *United States v. Barker*, 681 F.2d 589, 591-92 (9th Cir. 1982) (advising that a court should not reject such an agreement unless the decision to dismiss other charges "is so unreasonable that the prosecutor is not properly carrying out his function"); *United States v. Ammidown,* 497 F.2d 615, 622 (D.C. Cir. 1974) (holding that the government's decision to dismiss charge in exchange for plea to a lesser charge should be disturbed only where "the action of the prosecuting attorney is such a departure from sound prosecutorial principle as to mark it an abuse of prosecutorial discretion"). The question whether the Second Circuit's more generous (to district courts) formulation is binding or, instead, was unnecessary to its result in *Torres-Echavarria* and therefore technically *dictum* need not be addressed here. It would require decision only if a district court were to accept a plea agreement because it felt compelled to do so as a matter of law by a standard less generous toward the scope of its discretion and thus foreclosed the court from accepting that agreement. As will appear, that is not the situation here.

[12]    *See* 18 U.S.C. § 3553(a).

"[a]mong the reasons that may justify the exercise of discretion to reject a plea agreement."[13]  But it is not the only consideration.

"Charging decisions are generally within the prosecutor's exclusive domain. Prosecutors – representatives of the executive branch of the government – are not mere servants of the judiciary."[14]  Hence, "separation of powers requires that the judiciary remain independent of executive affairs."[15]  While Rules 11 and 48[16] both require the exercise of judicial discretion as a check on certain prosecutorial decisions of this nature, district "'courts should be wary of second-guessing prosecutorial choices' because '[c]ourts do not know which charges are best initiated at which time, which allocation of prosecutorial resources is most efficient, or the relative strengths of various cases and charges.'"[17]  That is so regardless of the precise formulation of the legal standard that circumscribes the scope of that discretion.  And these separation of powers considerations are very much at play in this case.

As an initial matter, the government rightly has pointed out that the 279 substantive counts against Abdel Bary in the S7 indictment, which contain all of the counts requiring the imposition of a life sentence upon conviction, focus solely on the embassy bombings.  Conviction on any one of them would depend on one of two theories: aiding and abetting the bombings or

---

[13]

*Torres-Echavarria*, 129 F.3d at 696 (citation omitted).

[14]

*United States v. Miller*, 722 F.2d 562, 565 (9th Cir. 1983) (citations and footnote omitted).

[15]

*Id.* (citation omitted).

[16]

Federal Rule of Criminal Procedure 48(a) requires that the government obtain leave of court to dismiss an indictment, information, or complaint.

[17]

*In re Ellis*, 356 F.3d 1198, 1210 (9th Cir. 2004) (en banc) (quoting *Miller*, 722 F.2d at 566).

*Pinkerton*[18] liability. Conviction on an aiding and abetting theory would require proof that Abdel Bary had foreknowledge of the intended bombings and acted or failed to act with the intention of bringing them about. *Pinkerton* liability would require the government to establish that the bombings were the foreseeable acts of Abdel Bary's co-conspirators in furtherance of the conspiracy to kill Americans.[19] In its submission, however, the government now has conceded that it is not aware of any evidence that Abdel "Bary assisted in planning for or in carrying out the bombings themselves, or counseled, commanded, induced or procured the bombings."[20] For this and other reasons articulated in its submission, the government submits, "the evidence of the substantive counts relating to the bombings" – especially the evidence that the bombings were foreseeable to Abdel Bary – "is not as strong" as that establishing his participation in a conspiracy to kill Americans.[21] Thus, while the government has not said so in precisely these words, it has implied that its ability to obtain a conviction on one or more substantive counts is uncertain.[22] Given what the government has said, that seems a reasonable assessment.

*Second*, Abdel Bary, absent the plea and plea agreement, would be joined for trial with two other defendants, Khalid al Fawwaz and Anas al Liby. Both are charged with four of the conspiracies with which Abdel Bary also is charged. Neither is charged with any of the substantive

---

18

     *Pinkerton v. United States*, 328 U.S. 640 (1946).

19

     *Id*. at 645-47.

20

     Ltr. from Sean S. Buckley to Court (Sept. 29, 2014) [DI 1734], at 3.

21

     *Id*. at 6.

22

     *Id*. at 3-6.

counts. The government has advised the Court, without dissent from counsel for any of the defendants, that acceptance of the Abdel Bary plea agreement and plea would result in a considerably shorter trial, thus conserving prosecutorial and judicial resources.

*Third*, the government notes that Abdel Bary has been incarcerated as a result of the charges in this case since July 1999[23] and now is 54 years of age. A sentence of twenty-five years imprisonment would result in his remaining in custody at least until he reaches his early sixties.[24] By that time, he will have spent a substantial amount of his adult life in prison.

*Fourth*, it is important to recognize that this defendant, unlike many others, forthrightly has admitted his guilt and criminal responsibility for conspiring to kill United States nationals, for making threats of future terrorist attacks contained in the claims of responsibility for the embassy bombings, and for conspiring to make those threats.

Finally, the government argues that the plea agreement should be accepted because Abdel Bary, notwithstanding his now admitted commitment "to the murderous goals of" al Qaeda and Egyptian Islamic Jihad and his fulfillment of an important role for them, never received military training or directly "played any operational role for either" with respect to acts of terrorism.[25] That

---

[23] He was in British custody from July 1999 until October 2012, when he was extradited to the United States after waging a long and ultimately unsuccessful battle to avoid extradition. He has been in U.S. custody since October 2012.

[24] While it is not clear whether the federal Bureau of Prisons, which is responsible for determining in the first instance release dates for those imprisoned by it for federal offenses, has determined that Abdel Bary would receive credit for his fifteen years and three months of imprisonment, the government has informed the Court that it is likely to do so. On that assumption, Abdel Bary would remain incarcerated until 2024, when he will be 64 years of age, subject to the possibility of a modestly earlier release to the extent that he proves eligible for and receives so-called "good time" based on proper behavior in prison.

[25] *Id.* at 10.

of course takes the government only so far.  Co-conspirators are criminally liable for all acts of their co-conspirators in furtherance of the goals of the conspiracy.  Moreover, a sentence of life imprisonment for participation in a terrorism conspiracy, particularly one that causes deaths, does not require an operational role.[26]  Nevertheless, prosecutors are entitled to draw distinctions even among such defendants, as such distinctions are at the core of their discretion, the exercise of which is central to the prosecutorial function.  And while the government's discussion of the possible infirmities of its case on the substantive counts does not apply to the charge of conspiracy to kill United States nationals, which were it prosecuted successfully under Section 2332(b) rather than Section 371 could yield a much more severe sentence, the considerations outlined above demonstrate that it was not unreasonable to charge Abdel Bary with conspiracy under Section 371.

*Conclusion*

A prosecutor's determination whether to enter into a plea agreement that contemplates the dismissal of some charges in exchange for a plea of guilty to other, lesser charges is a discretionary function of the executive branch of our government.  While a court has a role to play in accepting or rejecting such a bargain, that role is not simply to substitute its judgment for that of the prosecutor.

---

[26]
Indeed, Congress specifically has provided so.  For example, 18 U.S.C. § 2332(b) provides in relevant part:  "Whoever outside the United States attempts to kill, or engages in a conspiracy to kill, a national of the United States shall . . . (2) in the case of a conspiracy by two or more persons to commit a killing that is a murder as defined in section 1111(a) of this title, if one or more of such persons do any overt act to effect the object of the conspiracy, be fined under this title *or imprisoned for any term of years or for life*, or both so fined and so imprisoned." (emphasis added).

The government's decision here was a reasonable one, well within the bounds of its proper function. This Court finds that the charges to which the defendant has pleaded guilty adequately reflect the seriousness of his actual offense behavior for the reasons discussed above and set forth in the government's submission, and that accepting the agreement in all of the circumstances will not undermine the statutory purposes of sentencing or the Sentencing Guidelines. The plea agreement, and defendant's plea of guilty, are accepted. The defendant is hereby informed that, to the extent the plea agreement is of the type specified in Rule 11(c)(1)(A), the agreed disposition will be included in the judgment. The case is set for sentencing on January 12, 2015 at 9:30 a.m.

SO ORDERED.

Dated:        September 30, 2014

_____

Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)