**Andrew G. Patel**
Attorney-at-Law
80 Broad Street, Suite 1900
New York, NY 10004
apatel@apatellaw.com
Fax: 646-304-6604                                                                                   Telephone: 212-349-0230

By ECF

September 16, 2020

Lewis A. Kaplan
United States District Judge
United States Courthouse
500 Pearl Street
New York, NY 10007

                            Re:    United States v. Adel Abdel Bary
                                         98 Cr. 1023 (LAK)

Dear Judge Kaplan:

      Adel Abdel Bary respectfully moves this Court to grant this motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) and to reduce his sentence to time served.  Should Your Honor grant this motion, Mr. Bary will be removed from the United States and returned to the United Kingdom, specifically to his family in London.

Background

      Adel Abdel Bary was arrested in his home in London on July 11, 1999, based on a warrant requesting his extradition to the United States.  His extradition was sought in connection with the August 7, 1998 bombings of the United States Embassies in Nairobi, Kenya and Dares Salaam, Tanzania and the resulting horrific loss of life, numerous injuries and destruction of property.

      After extensive litigation before the Court in the United Kingdom and the European Union, Mr. Bary was extradited to the Southern District of New York on October 6, 2012.  His appearance was followed by extensive investigation and a eventually negotiations with the Government.  We were able to persuade the Government that a guilty plea to significantly reduced charges would result in an appropriate disposition.  On October 1, 2014, Mr. Bary entered a guilty plea to an Information before Your Honor.

**Honorable Lewis A. Kaplan**
United States District Judge
September 16, 2020
Page 2

On February 6, 2016, Your Honor sentenced Mr. Bary to 300 months of incarceration. According to the Bureau of Prisons [BOP], Mr. Bary is scheduled to be released on October 28, 2020. Under the terms of his extradition, upon his release, Mr. Bary will be returned to the United Kingdom where he has been granted asylum from Egypt.

Compassionate Release

The First Step Act, 18 U.S.C. § 3582(c)(1(A)(i), allows federal prisoners to move for compassionate release when "extraordinary and compelling reasons" warrant such release. There are four prerequisites to a Court's granting compassionate release under the First Step Act:

(1) the defendant must have exhausted his administrative rights with the BOP;

(2) the Court must find that "extraordinary and compelling reasons warrant" release;

(3) the Court must consider the factors set forth in 18 U.S.C. § 3553(a) which in relevant part include;

   1. The nature and circumstances of the offense and the history and characteristics of the defendant; 18 U.S.C. Section 3553(a)(1)

   2. The need for the sentence imposed; 18 U.S.C. Section 3553(a)(2) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

      to afford adequate deterrence to criminal conduct (general deterrence).

      to protect the public from further crimes of the defendant (specific deterrence).

      to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

> (4) the Court must find that release is consistent with the Sentencing Commission's policy statements at U.S.S.G § 1B1.13 which includes that extraordinary and compelling circumstances that warrant the granting of a motion for compassionate release include certain medical conditions (See, *U.S. v. Glover*, 2020 WL 4923635, at *4, (D.D.C. August 21, 2020); and that the defendant is not a danger to the safety of any other person or to the community. *See, United States v. Ganeene Goode*, No 14-cr-810 (CM), Dkt, No 514 at 3 (S.D.N.Y. Aug. 10, 2020).

Mr. Bary Has Exhausted His Administrative Remedies

Prior to petitioning the Court, § 3582 requires Mr. Bary to either exhaust his administrative remedies with the BOP or wait 30 days following the warden's receipt of his compassionate release request, whichever happens first. See 18 U.S.C. § 3582(c)(1)(A); see also *United States v. Field*, 18 Cr 426 (JPO), [Dkt. 38] at *2 (S.D.N.Y. May 4, 2020) (deeming claim ripe for judicial review 30 days after the defendant submitted a request to warden, where warden denied the claim within the 30-day period); *United States v. Cooper*, 8 CR 356 (KMK), [Dkt. 181], at *7 (S.D.N.Y. Apr. 28, 2020) ("the application is now fully exhausted, based on BOP's denial of the application on April 17, 2020.").

Mr. Bary has fulfilled the exhaustion prerequisite. He sent request for compassionate release to Staff of FCI Fairton on May 26, 2020 which was denied. See Exhibit A. Because Mr. Bary has fulfilled the statute's administrative exhaustion requirement, the Court has authority to address the merits of his petition.

Extraordinary and Compelling Reasons

Mr. Bary' confinement at a BOP facility in the middle of a pandemic that is ravaging inmates and staff, and his medical needs, make him particularly susceptible to sickness and complication should he contract the virus. These combined concerns constitute an extraordinary and compelling reason for his release under 18 U.S.C. § 3582(c)(1)(A)(i).

While there are many unknowns about the virus, one thing is clear: COVID-19 is deadly and highly contagious. The CDC advises that the coronavirus is "spread mainly from person-to-person . . . [b]etween people who are in close contact with one another . . . [t]hrough respiratory droplets produced when an infected person coughs or sneezes." The droplets can land in the mouths or noses, or can be inhaled into the lungs, of people

**Honorable Lewis A. Kaplan**
United States District Judge
September 16, 2020
Page 4

who are within about six feet of the infected person.  Those who are infected can spread the virus, even if they are asymptomatic.   There is no known treatment, vaccine, or cure for COVID-19 and citizens are warned daily to practice social distancing and to take precautions when exposed to other individuals, even on a limited basis.  The CDC has advised that individuals of any age who have serious underlying medical conditions might be at a higher risk for severe illness from COVID 19.

COVID-19 cases have been spreading rapidly at multiple BOP facilities, and containment has proved to be impossible.  Bureau of Prisons staff come and go every day, and although efforts are made to limit inmates' transport and transfer, due to the communal nature of the living arrangements and the inability of inmates to self-isolate and regularly wash and sanitize their hands, correctional facilities pose a unique risk to both inmates and staff.

On March 27, 2020, more than 400 former DOJ leaders, attorneys, and federal judges sent an open letter to the President, asking that he take immediate action to reduce the population in correctional facilities to prevent the catastrophic spread of COVID-19, in particular by commuting the sentences of elderly and medically vulnerable inmates who have already served a majority of their sentences. Leading public health experts made a similar request, as did members of Congress.  On April 3, 2020, Attorney General Barr issued a memorandum directing the BOP to move vulnerable prisoners into home confinement with due "dispatch."   On April 10, 2020, members of Congress wrote again to Attorney General Barr, noting that several inmates had since died in BOP custody, many of whom had pre-existing medical conditions.

Judges throughout the country are responding to this crisis and heeding advice of medical experts by releasing vulnerable inmates from overcrowded facilities.  I am sure that this Court is aware of the many instances of compassionate release being ordered in this District as the string-cites of those many cases is now as long as many briefs requesting release.

According to the BOP's website, FCI Fairton houses a total of 927 inmates.[1]  FCI Fairton is unusual in the BOP system as 923, almost all of the inmates, have been tested.  The test results are alarming.  Again, according to the BOP's own information, 102 inmates almost 10% of the inmate population, has tested positive at FCI Fairton which is more than twice the national average infection rate for the general public.[2]

---

[1] https://www.bop.gov/locations/institutions/fai/index.jsp (last visited on September 15, 2020.)

[2] https://www.bop.gov/coronavirus (last visited on September 15, 2020.)

**Honorable Lewis A. Kaplan**
United States District Judge
September 16, 2020
Page 5

Health Concerns

     We are living in the midst of a worldwide pandemic due to the emergence of COVID-19, a virus which is new to medical science. While our knowledge of this disease increases on a near daily basis, we currently have no vaccine and no proven course of treatment. According to the New York Times, as of September 15, 2020, over 6,500,000 Americans have been infected with COVID-19 and over 194,000 Americans died of COVID-19. These numbers may well have been dwarfed by the time Your Honor decides this motion.

     Mr. Bary faces real danger should he contract COVID-19. Mr. Bary, who is 60 years old, suffers from asthma. See portion of BOP medical records attached as Exhibit B. The CDC has advised that older adults (people in their 60s) suffering from underlying conditions, such as asthma, are at an increased risk of severe illness from COVID-19.[3]

     Mr. Bary's continued incarceration now significantly increases his risk of infection, which could wreak disastrous health outcomes. In sentencing Mr. Bary, the Court did not intend to impose a life sentence. The Court should release Mr. Bary to avoid precisely that outcome. See, e.g., *United States v. Valencia*, 2020 WL 2319323, at *7 (S.D.N.Y. May 11, 2020, J. Torres) ("The Court did not intend that Valencia's sentence 'include incurring a great and unforeseen risk of severe illness or death' brought on by a global pandemic.") (quotation marks and citations omitted); *United States v. Bess*, 2020 WL 1940809, at *10 (W.D.N.Y. April 22, 2020, J. Vilardo) (granting compassionate release to defendant sentenced to 84 months less than a year earlier, explaining "[t]his Court is now even more convinced that unless it lowers Bess's sentence, there is a substantial risk that he will become seriously ill and, with an unsettlingly high degree of probability, serve a life sentence.").

Release Plan

     Mr. Bary's release plan was established before he arrived in this District. By granting this motion, Your Honor will start the process of returning Mr. Bary to his family in London. This plan was established in the extradition arrangement that brought him from the United Kingdom. He will never walk the streets of any town or city in the United States.

---

[3] See, CDC Guidelines at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html

**Honorable Lewis A. Kaplan**
United States District Judge
September 16, 2020
Page 6

<u>18 U.S.C. § 3553(a) Factors</u>

When extraordinary and compelling reasons are established, the Court must consider the relevant sentencing factors in § 3553(a) to determine whether a sentence reduction is warranted.

Here, the overriding factor under § 3553(a) that was not present at the time of sentencing is the COVID-19 pandemic and the serious risk it presents to Mr. Bary's health and safety. The purpose of just punishment does not warrant a sentence that includes exposure to a life-threatening illness. In fact, the Eighth Amendment's prohibition on cruel and unusual punishment includes unreasonable exposure to dangerous conditions in custody. "It is cruel and unusual punishment to hold convicted criminals in unsafe conditions." *Helling v. McKinney*, 509 U.S. 25, 33 (1993) (quotation marks and citations removed); see also *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995) (applying *Helling* to exposure to asbestos); *Brown v. Mitchell*, 327 F. Supp. 2d 615, 650 (E.D. Va. July 28, 2004) (applying *Helling* to "contagious diseases caused by overcrowding conditions").

The Eighth Amendment also guarantees inmates in BOP custody the right to adequate medical care for a serious medical need. See *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Estelle v. Gamble*, 429 U.S. 97, 103–05 (1976). One court recently invoked the Eighth Amendment in granting a motion for compassionate release, noting that "a reduction of [defendant's] sentence will enable him to seek, from the doctors and hospitals of his choice, what may be better medical care than the BOP is obligated or able to provide, particularly given the very real threat that COVID-19 poses in the institutional environment." *United States v. Williams*, 2020 WL 1751545 (N.D. Fla. Apr. 1, 2020).

In determining whether, and, to what extent, to reduce the sentence, this Court must take into consideration not only the offense conduct and the need for the sentence to reflect the seriousness of the offense and provide just punishment, but also all of the other § 3553(a) factors, including Mr. Bary's history and characteristics, the need to afford adequate deterrence, the need to protect the public from further crimes of the defendant, and the need for rehabilitation. Mr. Bary has served almost the entirety of his very substantial sentence.

Most importantly, Mr. Bary is not a danger to the community. He has never advocated violence and the organization that he had associated with more than 20 years ago has been reduced to a historical relic. We seek compassionate release to ensure that

**Honorable Lewis A. Kaplan**
United States District Judge
September 16, 2020
Page 7

Mr. Bary does not die of a virus on the eve of rejoining his family after decades of separation.

Granting this motion comports with the goals of sentencing as the goal of most sentences is that they should end and the defendant be returned to society and his family.

In the time of worldwide pandemic, tempering justice with mercy supports that ultimate goal of sentencing

Conclusion

Nobody could have foreseen at the time of sentencing that this pandemic would occur. This pandemic demands that we reconsider sentences that were imposed when inmates were not put in grave danger by virtue of their conditions of confinement. COVID-19 is highly transmissible and extraordinarily dangerous and poses a severe threat of death to inmates such as Mr. Bary who have no ability to protect themselves from infection. Mr. Bary's vulnerability to contracting and potentially succumbing to this deadly disease constitutes "extraordinary and compelling reasons" to grant compassionate release and to reduce his sentence to time served.

                                  Respectfully submitted,

                                    /s/Andrew Patel
                                  Andrew G. Patel

encl.

cc:     All counsel by ECF

# Exhibit A

BP-A148.055
SEP 98
U.S. DEPARTMENT OF JUSTICE

**INMATE REQUEST TO STAFF** CDFRM

FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member) | DATE: |
|---|---|
| WARDEN | 5-26-20 |
| FROM: Adel Bary | REGISTER NO.: 67496-054 |
| WORK ASSIGNMENT: N/A | UNIT: C-L |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.

I would like to be considered for early Home Confinement under the Cares Act. COV-19,

THANK YOU

(Do not write below this line)

DISPOSITION:

At this time, you do not meet the criteria due to your pending detainer. Any questions, see Ms. Harker.

Signature Staff Member: Ms. Harker

Date:

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070

# Exhibit B

# Bureau of Prisons
# Health Services
# Clinical Encounter

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | BARY, ADEL ABDEL | | | Reg #: | 67496-054 |
| Date of Birth: | 04/24/1960 | Sex: M | Race: WHITE | Facility: | FAI |
| Encounter Date: | 04/30/2020 14:31 | Provider: | Knowles, Kyle PA-C | Unit: | C02 |

Mid Level Provider - Follow up Visit encounter performed at Health Services.

## SUBJECTIVE:

**COMPLAINT 1**   **Provider:** Knowles, Kyle PA-C

**Chief Complaint:** PULMONARY/RESPIRATORY

**Subjective:** 60 year old male patient with PMH of asthma, presents for follow up visit regarding shortness of breath. Patient reports intermittent SOB due to asthma. He states this mainly occurs at night, and that most nights he awakens from sleep with asthma symptoms. He admits intermittent productive cough. He reports intermittent wheezing. He states he uses albuterol three to four times per week. He is also prescribed Asmanex 220 mcg/inh 2 puffs by mouth at bedtime, with which he reports compliance. He states his asthma is worse during the spring season.

**Pain:** No

## OBJECTIVE:

**Temperature:**

| Date | Time | Fahrenheit | Celsius | Location | Provider |
|---|---|---|---|---|---|
| 04/30/2020 | 14:37 FAI | 98.4 | 36.9 | Oral | Knowles, Kyle PA-C |

**Pulse:**

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 04/30/2020 | 14:37 FAI | 62 | Via Machine | Regular | Knowles, Kyle PA-C |

**Respirations:**

| Date | Time | Rate Per Minute | Provider |
|---|---|---|---|
| 04/30/2020 | 14:37 FAI | 18 | Knowles, Kyle PA-C |

**Blood Pressure:**

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|---|---|---|---|---|---|---|
| 04/30/2020 | 14:37 FAI | 112/73 | Right Arm | Sitting | | Knowles, Kyle PA-C |

**Wright Peak Flow:**

| Date | Time | Attempt 1 | Attempt 2 | Attempt 3 | Effort | Bronchodilator | Provider |
|---|---|---|---|---|---|---|---|
| 04/30/2020 | 14:38 FAI | 450 | 350 | 350 | Fair | Without | Knowles, Kyle PA-C |

**SaO2:**

| Date | Time | Value(%) | Air | Provider |
|---|---|---|---|---|
| 04/30/2020 | 14:37 FAI | 98 | Room Air | Knowles, Kyle PA-C |

**Weight:**

| Date | Time | Lbs | Kg | Waist Circum. | Provider |
|---|---|---|---|---|---|
| 04/30/2020 | 14:37 FAI | 230.0 | 104.3 | | Knowles, Kyle PA-C |

**Exam:**

**General**

**Affect**

Yes: Pleasant, Cooperative

**Appearance**