UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

    -against-

ADEL ABDEL BARY,

       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

98-cr-1023 (LAK)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/7/2020

## MEMORANDUM OPINION

Appearances:

    Andrew G. Patel
    *Attorney for Movant*

    Stephen J. Ritchen
    Assistant United States Attorney
    AUDREY STRAUSS
    ACTING UNITED STATES ATTORNEY
    *Attorneys for Respondent*

LEWIS A. KAPLAN, *District Judge.*

    Defendant was a member of a terrorist organization affiliated with al Qaeda that sought to overthrow the government of Egypt. While based in the United Kingdom, he disseminated propaganda surrounding the al Qaeda's bombing of the American embassies in Kenya and Tanzania in 1998. Following his extradition to the United States, he pled guilty on October 1, 2014 to conspiring to murder U.S. nationals outside the United States, conspiring to make threats concerning an attempt to kill, injure, and intimidate an individual and unlawfully to damage and destroy property by means of an explosive, and making threats concerning the same. The Court sentenced defendant

to the statutory maximum sentence of 300 months in prison on February 6, 2015.  He is scheduled

for release on October 28, 2020.  The Court is informed that he is the subject of an immigration

detainer that will result in his removal to the United Kingdom upon his release.

Before the Court is defendant's motion for compassionate release pursuant to 18

U.S.C. § 3582(c).  Defendant contends that his confinement in a Bureau of Prisons facility places

him at a heightened risk of contracting COVID-19, and that his medical conditions would expose

him to serious health consequences were he to become ill.  He notes that he is 60 years old and

asserts that he suffers from asthma, which the government does not dispute.

Under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, the Court may

modify a term of imprisonment upon a defendant's motion only "after the defendant has fully

exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the

defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the

defendant's facility, whichever is earlier."[1] Defendant sent a request asking "to be considered for

early home confinement under the Cares Act, COV-19" on May 26, 2020, which was denied on an

unspecified date.[2]   The government argues that this request did not satisfy the exhaustion

requirement because defendant requested home confinement, not compassionate release.

The government is correct that "requests for home confinement and for furlough are

not requests for compassionate release."[3]  But defendant's failure to exhaust his administrative

---

[1]     18 U.S.C. § 3582(c)(1)(A).

[2]     Dkt. 2154, Ex. A.

[3]     *United States v. Merlo*, No. 17-CR-0738 (LAK), 2020 WL 3001039, at *1 (S.D.N.Y. June 4, 2020).

remedies is not necessarily dispositive.  Although the district courts of this circuit are not of one mind on this subject, there are several reasons for concluding that Section 3624(c)'s exhaustion requirement is not jurisdictional and can be waived by a district court in certain circumstances.[4]

To begin, the Supreme Court has instructed that unless Congress "has 'clearly stated' that [a] rule is jurisdictional," courts should treat it as nonjurisdictional.[5]  Section 3624(c) does not purport to create a jurisdictional exhaustion requirement.  In fact the Second Circuit has stated that Section 3582(c)(2), a related provision, is not jurisdictional.[6]  Without a clear statement from Congress that it intended to bootstrap a district court's jurisdiction to hear a compassionate release motion to the exhaustion provision, the Court joins the many others in this district that have declined to read such a requirement into the statute.[7]  "Section 3582(c)(1)(A) is a claim-processing rule, rather than a jurisdictional one."[8]

The question then becomes whether the exhaustion requirement may be waived by the Court and, if so, in what circumstances.  "Even where exhaustion is seemingly mandated by

---

[4]

See *United States v. Haney*, No. 19-CR-541 (JSR), 2020 WL 1821988, at *2-3 (S.D.N.Y. Apr. 13, 2020).

[5]

*Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013) (citation and brackets omitted).

[6]

*Cf. United States v. Johnson*, 732 F.3d 109, 117 & n.11 (2d Cir. 2013).

[7]

See *Haney*, No. 19-CR-541 (JSR), 2020 WL 1821988, at *1 n.1 (citing cases).  Several courts in this circuit have gone the other way on this issue.  *See id.*  This Court finds the former view more persuasive.

[8]

*United States v. Russo*, No. 16-cr-441 (LJL), 2020 WL 1862294, at *5 (S.D.N.Y. Apr. 14, 2020).

4

statute or decisional law, the requirement is not absolute."[9] The Second Circuit and Supreme Court have held that, in general, "exhaustion may be unnecessary" if (1) "it would be futile, either because agency decisionmakers are biased or because the agency has already determined the issue," (2) where "the administrative process would be incapable of granting adequate relief," or (3) "where pursuing agency review would subject plaintiffs to undue prejudice."[10]

The second set of circumstances is present here. Defendant is due to be released from prison in fewer than thirty days. Thus, even if he immediately submitted a letter to the warden requesting compassionate release, his receipt of that relief would turn on whether the warden responded promptly and affirmatively. Thus, absent the ability to raise his arguments on this motion, defendant would have only a doubtful and uncertain avenue to seek compassionate release. Enforcing an exhaustion requirement to bar defendant from any opportunity to seek relief would be unduly prejudicial.

The purpose of Section 3582(c) reinforces this conclusion. The statute is not built around the idea that courts would be better able to adjudicate compassionate release motions if they first receive the warden's opinion. In fact, the statute does not require the warden to offer an opinion at all. The defendant gains the right to file a motion in court when the warden denies a motion *or* if the warden does not respond within thirty days. Even where the warden denies a request, a court is under no obligation to defer to that decision. And, more fundamentally, the question of whether a defendant should be released calls for the application of a legal standard, which is not a task for

---

[9]       *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019).

[10]       *See id.* at 118-19 (citing *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992)).

which a warden has any special expertise.  As other courts have noted, this scheme "unquestionably reflects congressional intent for the defendant to have the right to a meaningful and prompt *judicial* determination of whether he should be released."[11]

Because strictly enforcing the exhaustion requirement on these facts as a practical matter would prohibit this defendant from seeking a judicial determination on his motion for compassionate release, the Court waives the requirement.  It thus turns to the merits of the motion.

Where the exhaustion requirement is met, a court may modify a defendant's sentence if (1) there are "extraordinary and compelling reasons" warranting a sentence modification and (2) the modification is supported by the factors set forth in 18 U.S.C. § 3553(a).[12]

The government concedes that defendant has provided extraordinary and compelling reasons for his release.  It notes that, according to the current guidance from the Centers for Disease Control ("CDC"), asthma *may* increase the health risks of one who contracts COVID-19 but the linkage is not as clear as it is for other conditions, such as obesity or heart disease.[13]  However, the government notes that defendant was diagnosed as obese in 2019 and that, as of April 2020, his body mass index was 36, which is well above the threshold for obesity.  On that basis, the government concedes that defendant has presented an extraordinary and compelling circumstance.

---

[11]    *Russo*, No. 16-cr-441 (LJL), 2020 WL 1862294, at *1 (citation omitted, emphasis added).

[12]    18 U.S.C. § 3582(c)(1)(A)(i). Federal district courts are not bound by the policy statements issued by the Sentencing Commission. *See United States v. Brooker*, No. 19-3218-CR, 2020 WL 5739712, at *6 (2d Cir. Sept. 25, 2020).

[13]    *See* PEOPLE WITH CERTAIN MEDICAL CONDITIONS, CENTERS FOR DISEASE CONTROL AND PREVENTION, (last updated Oct. 7, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medic al-conditions.html.

Case 1:98-cr-01023-LAK   Document 2158   Filed 10/07/20   Page 6 of 8

Accordingly, the dispute turns on the sentencing factors set forth in 18 U.S.C. § 3553(a). "Those factors include: (1) 'the nature and circumstances of the offense and the history and characteristics of the defendant,' (2) 'the need for the sentence imposed' to, among other objectives, 'provide just punishment for the offense,' and (3) the Sentencing Guidelines range."[14]

Defendant played a role in a terrorist enterprise. The bombing of two United States embassies, resulting in the deaths of hundreds of people, was an extremely serious crime. Defendant was part of the conspiracy that produced those attacks. But his participation is better characterized as spreading propaganda in coordination with the individuals who authorized the attacks. That too was a serious crime, but it was not nearly as serious as the crimes of his co-conspirators.

In addition to this consideration is the fact that defendant has served nearly all of his sentence. No matter how the Court resolves this motion, he is due to be released from prison before the end of the month. Defendant's obesity and somewhat advanced age make COVID-19 significantly more risky to him than to the average person. And his continued incarceration increases his risk of catching the virus. In these circumstances, the benefit to society of requiring defendant to serve the final few weeks of his sentence does not outweigh the serious health risks he faces.

Given the very narrow difference between defendant's release date absent compassionate release and his release date if his motion were granted, one well may ask whether the grant or denial of this motion is of any practical significance. Indeed, events may prove that it would have none. But the opposite outcome also is possible, and that possibility is why this motion is of real importance.

---

[14]

*Merlo*, No. 17-cr-0738 (LAK), 2020 WL 3001039, at *3 (quoting 18 U.S.C § 3553(a)).

Defendant is 60 years old.  He has been incarcerated for a very long time. Whether he is released now or on October 28, he will be at significant risk of COVID-19 infection.  Should he contract the virus, his age, obesity and existing respiratory illness would result in a significant risk of a fatal outcome.  So the importance of this motion is this:  the sooner defendant's remaining days of imprisonment end, the greater the chance – in the event he contracts the virus and the virus proves fatal to him – that he could spend his last days or hours with his family rather than in a jail cell.

Defendant's crimes, as the government contends, were terrible – so much so that this Court initially questioned the government's decision to allow him to plead guilty to reduced charges.[15]  Nevertheless, the government's interest in keeping him incarcerated for a few more days by resisting this motion is very small.  It is not sufficient to keep him away from his family in what could prove to be the final period of his life.  As Shakespeare wrote:

> "The quality of mercy is not strained.
> It droppeth as the gentle rain from heaven
> Upon the place beneath. It is twice blest:
> It blesseth him that gives and him that takes.
> 'Tis mightiest in the mightiest; it becomes
> The thronèd monarch better than his crown.
> His scepter shows the force of temporal power,
> The attribute to awe and majesty
> Wherein doth sit the dread and fear of kings;
> But mercy is above this sceptered sway.
> It is enthronèd in the hearts of kings;
> It is an attribute to God Himself;
> And earthly power doth then show likest God's
> When mercy seasons justice."[16]

---

15

*United States v. Bary*, 57 F. Supp. 3d 300 (S.D.N.Y. 2014).

16

William Shakespeare, *The Merchant of Venice,* Act IV, Scene 1.

8

This is a case in which the earthly power of the United States should allow mercy to season justice.

*Conclusion*

Defendant's motion for compassionate release [Dkt. 2154] is granted.  His term of imprisonment is modified so that it expires on October 9, 2020.  Subject to any immigration detainer, he shall be released on that date..

SO ORDERED.

Dated:        October 7, 2020

Lewis A. Kaplan
United States District Judge